UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA

    -against-

NADEEM MEHMOOD QURAISHI,

                Defendant.

MOTION TO SUPPRESS

Cr. No. 15-CR-598 (CBA)

------------------------------------------------------X

    The above-named defendant, by his attorney, Mark A. Macron, hereby moves the court as follows:

I. MOTION TO SUPPRESS STATEMENTS OF NADEEM MEHMOOD QURAISHI

i. Request a hearing to suppress statements made to law enforcement personnel in that the statements were coerced and the Miranda Rights were not knowingly and intelligently waived.

ii. Request a hearing to suppress statements made to persons acting on behalf of law enforcement.

A. Statement of Facts

1. The facts as stated in the defendant's affidavit annexed hereto are incorporated and made a part hereof.

2. On October 25, 2015 at 12:00 midnight, Nadeem Mehmood Quraishi boarded United Emirates Airlines flight EK – 203 in Dubai, UAE to J.F.K. Airport. The duration of the flight was 13 hours. The flight landed at J.F.K. Airport on October 26, 2015 at approximately 8:30 a.m. (EST).

3. During the flight, there was an alleged incident between Mr. Quraishi and a female passenger. Purportedly, statements were made by Mr. Quraishi to one or more flight personnel, possibly acting on behalf of law enforcement.

4. The sum and substance of those statements were transcribed to a *Port Authority Police of NY & NJ Statement* form complete with a jurat, and a *Federal Bureau of Investigation form FD-302*.

5. Upon arriving at J.F.K. Mr. Qurasihi was escorted off the airplane by law enforcement and arrested at approximately 8:45 a.m.

6. Mr. Quraishi was taken to another part of J.F.K. Airport and at approximately 12:47 p.m. was read Miranda Rights.

7. Mr. Quraishi was interrogated by three members of law enforcement: Detective Christopher Caruso, Federal Air Marshall Chris Souter, and Agent Robert Murphy. The interview concluded at approximately 1:12 p.m. the same day.

B. Statement of Legal Issues

1. Whether Mr. Quiraishi's willingly and intelligently waived his Miranda rights in regards to the videotaped statements?

2. Whether the flight personnel were acting as Agents of law enforcement and therefore Mr. Quiraishi's Miranda Rights attached and were not waived?

Dated:  Staten Island, New York
        February 23, 2016.

MARK A. MACRON
JIN P. LEE, Of Counsel
Attorneys for the defendant
491 Bard Avenue
Staten Island, New York 10310
(718) 889-3582
mark@macronesq.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA | AFFIDAVIT IN SUPPORT OF MOTION TO SUPPRESS |
| -against- | Cr. No. 15-CR-598 (CBA) |
| NADEEM MEHMOOD QURAISHI, | |
| Defendant. | |

------------------------------------------------------X

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF RICHMOND )

Nadeem Mehmood Quraishi, being duly sworn, deposes and says,

1. I submit this affidavit in support of my Motion to Suppress Statements made by me to members of law enforcement.

2. I live at 18 Father Capodanno Boulevard, Staten Island, New York, with my wife, Zanib Quraishi and three children. I have two daughters, ages 13 and 12. I also have a son who is six years old.

3. I was born on December 21, 1972 in Gujranwala, Pakistan. I lived there from 1972 to 1993. I lived in Islamabad, Pakistan from 1993 to 1998. I came to the United States in 1998 when I was 26 years old.

4. The Pakistani police are known to beat confessions out of people. When you are arrested, you tell them what you think they want to hear. Afterwards, you tell the Judge the truth, because they know the police are corrupt. In the culture I was raised with in Pakistan you are not in a position to say "no" to a policeman. I have seen firsthand in Pakistan, police beating suspects in public. There are times when they take off the pants of the suspects, laid with their face on the ground, and are then hit on the butt with a "big wooden shoe." The "big

wooden shoe" is a large piece of leather on a two by four used to punish, humiliate and torture people.

5. On February 23, 2013, my mother was murdered in Islamabad, Pakistan. The police arrested a number of suspects. The police allowed my brother to beat the suspects after their arrest. As of today, the suspects have yet to be convicted for the murder of my mother. Based on my background and experience in Pakistan the police are to be feared.

6. In the United States I have been stopped, detained and specially questioned on three previous occasions at J.F.K. airport before October 26, 2015. I suspect because I am a Muslim and I am coming from Pakistan.

7. Prior to my flight from Dubai to New York on October 25, 2015. I had not slept in more than two days because of travelling. I woke up around 10:00 a.m. on October 24 2015 in Lahore, Pakistan and at 11:00 p.m. took a bus from Lahore. I arrived at Islamabad, Pakistan at around 4:00 a.m. the next day on the October 25 2015. I then took a cab to the Islamabad, Pakistan International Airport, and waited there for the 9:30 a.m. flight to Karachi, Pakistan. I landed in Karachi at approximately 11:35 a.m. I flew out of Karachi at 9:00 p.m. on a flight to Dubai, United Emirates. It was approximately a two-hour flight to Dubai. I then took the midnight flight out of Dubai, and landed in J.F.K. airport around 8:30 a.m. on October 26, 2015, where I was arrested. There is a time difference of 10 hours between Lahore, Pakistan and New York City. In total, I was awake for approximately 50 hours. While it was 8:30 a.m. New York time, it was 10:30 p.m. Lahore time. I was quite fatigued and suffered from extreme jetlag.

8. While on the flight over, and after the female passenger made a complaint against me, I was approached by a least one female who appeared to be an employee of the airline. I was asked a number of questions about what happened and made statements to this person or persons. I do not know at whose behest these persons were asking me questions. I do not know if they were members of law enforcement, or acting on behalf of law enforcement.

9. Upon arriving at J.F.K. I was off loaded from the airplane, while all the other passengers were told to remain in their seats. Right outside the cabin of the air plane, in the walkway, I was ordered to turn around, spread my legs, and I was handcuffed. I was placed under arrest without being told of the charges.

10. On the morning of October 26, 2015, I was escorted out of the airplane of United Emirates flight EK- 203 by armed law enforcement personnel and taken to the immigration section of J.F.K. airport. I have been escorted there on previous occasions upon entry into the United States, but have never been treated like this before. The armed law enforcement personnel told me to take off my jacket and empty my pockets. People came in and out of that room, sometimes laughing and gesturing, like something big was going on. There were about 3-6 people in all. I was handcuffed behind my back. One of the armed men took out a knife and cut my suitcase, my clothes, my shoes and threw my Holy Books, including the Holy Koran on the table. I was terrified. I am a Muslim originally from Pakistan, I was terrified that I would be taken as a terrorist, certainly I felt I was treated like one. I thought to myself, "Why would they cut my belongings as if there were explosive in them?"

11. I was then fingerprinted and photographed at the immigration section and re-handcuffed. I was put in a holding cell. I was still not told of any charges.

12. At a certain point I was taken out of the cell and was taken to an unmarked car. Outside, it was very cold, and I haven't slept in over 50 hours. They drove about 10 minutes and took me to a place that looked like a hanger. There were three armed men, none of them identified themselves. They did not show me badges or identification, but I saw all three had guns on their hips. I was told by one of them, whom I later find out to be Detective Christopher Caruso, to take off my full sleeve dress shirt. I was given a white T-shirt and handcuffed to a wall. I was very cold.

13. The officers told me they wanted to ask me some questions. I informed them that I wanted to see a judge as soon as possible. I was told by Detective Caruso that "this could go the short, easy way, or the long, hard way." I interpreted this as "tell us what we want to hear and then you'll go see a judge."

14. The three armed men told me their names the first time when they started to interrogate me as seen in the video. I believe their names are Detective Christopher Caruso, Federal Air Marshall Christa Souter, and Agent Robert Murphy.

15. When I was being asked questions, there were a number of times when I wanted a lawyer, but I thought of what the detective threatened: "…short, easy way, or long, hard way…" I also thought that by the time a lawyer got there, it would take even longer. I had not slept in over 50 hours. My children were at home waiting for me. I really had to urinate, but was cuffed to the wall. I was afraid of being treated as a terrorist. I just wanted to see a judge, and get out of there. I told them what I thought they wanted to hear.

I declare under penalty of perjury under the laws of the United States of America and the State of New York, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 23rd day of February, 2016 in Staten Island, New York.

_____
Nadeem Mehmood Quraishi

Sworn to before me on this
23rd day of February 2016
_____
Notary Public

MARK A. MACRON
Notary Public, State of New York
No. 02MA5064187
Qualified in Richmond County
Commission Expires Aug. 12, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA

   -against-　　　　　　　　　　　　　　　　Cr. No. 15-CR-598 (CBA)

NADEEM MEHMOOD QURAISHI,

              Defendant.

------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF NADEEM MEHMOOD QURAISHI'S PRETRIAL MOTION TO SUPPRESS STATEMENTS

### I. THE COURT SHOULD SUPPRESS THE VIDEOTAPED STATEMENTS OF NADEEM MEHMOOD QURAISHI BECAUSE HIS STATEMENTS WERE COERCED

By the time Mr. Quraishi was interrogated by three armed law enforcement personnel, he had travelled half a world, and have been awake for over 50 hours.

The agents that took Mr. Quraishi's videotaped statements administered Miranda warnings to him. A court may admit statements elicited after a recitation of Miranda warnings if police officers and other governmental agents obtained a valid waiver of Miranda rights before they obtained incriminating statements. To admit such statements, the prosecution bears the burden of proving by a preponderance of the evidence that the defendant waived his Miranda rights and that such waiver was voluntary. See, *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

   a. <u>Mr. Quraishi felt intimidated and coerced into waiving his Miranda rights</u>

Mr. Quraishi was administered Miranda warnings as evident in the video recording of his interrogation. However, the waiver of that right was not voluntary

because Mr. Quraishi felt coerced into waiving his Miranda warnings. *Moran v. Burbine*, 475 U.S. 412, 421 (1986) provides that the examination of the admissibility of a suspect's statement does not end when the government claims that the suspect waived his Miranda rights. Rather, "The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." *Id.*

According to Mr. Quraishi's affidavit, he had watched as a law enforcement officer who did not identify himself, use a knife to slash his belongings as if he was a terrorist suspect. When Mr. Quraishi informed the officers that he wanted to see a judge, another law enforcement officer, Detective Christopher Caruso stated to Mr. Quiraishi that "…this can go the short, easy way, or the long, hard way…" These actions frightened Mr. Quraishi and he felt compelled to waive his Miranda rights and take "the short, easy way," which in his mind was to leave the confines of that interrogation room, his interrogators, and see a judge.

Mr. Quraishi was raised in Pakistan with a deference to authority. His views toward police are colored by his experiences in Pakistan where acquiescence to authority is the norm. A person's Miranda waiver "must have been made with a full awareness, both of the nature of the right to be abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Mr. Quiraishi, was not aware that his statement at the interrogation, could not be changed as they are in Pakistan.

   b. <u>Viewing the "totality of the circumstances" Mr. Quraishi's waiver was involuntary</u>

By the time Mr. Quraishi was interrogated by the three law enforcement officers, a number of things had happened that created circumstances where his waiver was not voluntary. Courts must look to the "totality of the circumstances surrounding the interrogation" and inquire if a defendant's statement are admissible. *Id*; see also, *Tague v. Louisiana*, 444 U.S. 469, 471 (1980).

Mr. Quraishi had not slept in 50 hours, was not given an opportunity to relieve himself, observed many armed personnel surrounding him, and someone with a knife cut open his belongings. Mr. Quraishi's was not fully informed, and did not knowingly waive his Miranda rights. His experience with the Pakistani police informed him that he can tell the authorities what they want to hear, and then go to court to straighten it out. *United States v. Montoya-Arrubla*, 749 F.2d 700 (11th Cir. 1985) provides that the

background and subjective condition of the accused may be relevant to a determination of whether officers elicited a knowing and intelligent waiver of Miranda rights.

## II. THE COURT SHOULD GRANT MR. QURAISHI A HEARING AS TO WHETHER THE AIRLINE PERSONNEL ACTED THE AGENTS OF LAW ENFORCEMENT PERSONNEL

a. The airline personnel may have acted as Agents for law enforcement

In this case there exist statements purportedly made by Mr. Quraishi to one or more unidentified airline personnel. The substance of said statements have been turned over to defense counsel as part of the government's discovery. These statements were memorialized by the Federal Bureau of Investigation (see Appendix I) and the Port Authority of New York & New Jersey (see Appendix II). The government has also turned over to defense counsel a set of handwritten notes without any indicia of who wrote these notes (see Appendix III). An inference may be made that it was written by a person or persons on the airplane.

It is important for Mr. Quraishi's defense to find out if the airline personnel, who communicated statements to law enforcement, were acting as Agents for law enforcement, under the aegis of law enforcement, or had law enforcement powers and duties. Miranda rights do not attach when incriminating statements are made to private persons in the absence of police subterfuge or intimidation. *Arizona v. Mauro*, 481 US 520, 529 (1987). If airline personnel were Agents, were law enforcement officers, or in the presence of an air marshal, then Mr. Quraishi's Miranda rights may have attached and the same analysis as to whether the waiver was valid should then be performed.

While the three written versions of Mr. Quraishi's statements are similar, there are some discrepancies. The handwritten notes contain many cross-outs and an arrow indicating a change in the sequence of questions and answers.

In the videotaped recording of Mr. Quraishi's statement, Detective Caruso states that Mr. Quraishi had made inculpatory statements to two stewardesses. *The Port Authority Statement Form*, and the *FBI FD-302 form*, though redacted, indicate that only one airline employee was informing the law enforcement recorder of the statements allegedly made by Mr. Quraishi on the flight. It is not clear if the airline informant were stating things as an eyewitness or from hearsay.

The Port Authority form also notes that: "We issued him a formal warning," which indicates there were more than one person involved, perhaps these were the two airline stewardesses referred by Detective Caruso. The Port Authority form further notes: " 'On behalf of CAPT., your behavior is unacceptable, if it continues, we will be forced to take necessary action against you.' And then he then started crying and went back to his seat." Defense would like to inquire as to how this warning was conveyed to Mr. Quraishi, and if the Captain issued other warnings to him. Clearly, Mr. Quraishi was not free or able to leave the airplane in midflight. Defense would like to further inquire if there was an armed air marshal on board.

In addition, *FBI form FD-302* memorializing the October 26, 2015 incident is dated October 28, 2015. A review of this document and the and the handwritten notes of airline personnel seems to indicate that the writer of the *FBI form FD-302* relied on the handwritten notes of the unidentified person(s) on the airplane. If indeed, the statements were made to a number of airline personnel, it would indicate that the handwritten statements might have been a compilation of a number of informers.

Defense seeks to be able to examine airline personnel or a person who would have knowledge of what happened on the airline to make a determination if airline personnel was acting in the capacity as an Agent for law enforcement at a hearing on the suppression of the statements, with all the issues as illustrated in section I above.

b.    <u>Mr. Quraishi did not waive his Miranda rights while on the airplane</u>

If the airline personnel were acting as Agents, whether Mr. Quraishi voluntarily waived his Miranda rights is at issue. The same factors that are relevant to a voluntariness determination of a Miranda waiver should be used to determine whether a confession is voluntary. *Colorado v. Spring*, 479 U.S. 564, 573 (1987).

The videotaped statement and the three versions of the memorialized statements purportedly given on the airplane are in sum and substance the same. Defense counsel has not been given any details as to the manner in which Mr. Quraishi gave those statements, to whom, and what the conditions were. Assuming that the airline personnel were Agents, then the circumstances on the airplane is important in ascertaining if Mr. Quraishi knowingly and intelligently waived those rights.

Without knowing further details on the airplane, the 6th amendment rights of Mr. Quraishi would be compromised. The government would in essence benefit from the use of those statements at trial, without meeting their burden of proof that Mr. Quraishi waived his Miranda rights, or if those rights were administered at all.

For these reasons, the Court should order the government to make available the person who took such statements and/or who knows of the circumstances in which the statements were made on the airplane.

Dated: Staten Island, New York
February 23, 2016.

MARK A. MACRON
JIN P. LEE, Of Counsel
Attorneys for the defendant
491 Bard Avenue
Staten Island, New York 10310
(718) 889-3582
mark@macronesq.com

APPENDIX I

Case 1:15-cr-00598-CBA   Document 23   Filed 02/24/16   Page 12 of 20 PageID #: 60

| FD-395<br>Revised<br>11-05-2002 | FEDERAL BUREAU OF INVESTIGATION<br>**ADVICE OF RIGHTS** |
|---|---|

### LOCATION

Place: John F. Kennedy Resident Agency    Date: 10/26/15    Time: 12:47 pm

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights. NMQ

You have the right to remain silent. NMQ

Anything you say can be used against you in court. NMQ

You have the right to talk to a lawyer for advice before we ask you any questions. NMQ

You have the right to have a lawyer with you during questioning. NMQ

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. NMQ

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time. NMQ

### CONSENT

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed: [signature]

### WITNESS

Witness: [redacted]

Witness: [redacted]

Time: 1:12 pm

**QURAISHI000002**

FD-395 (Revised 11-05-2002)    Page 1 of 1    FEDERAL BUREAU OF INVESTIGATION

FD-302 (Rev. 5-8-10)　　　　　　　　- 1 of 2 -

FEDERAL BUREAU OF INVESTIGATION 

Date of entry　10/28/2015

On October 26, 2015, ▓▓▓▓▓▓ date of birth ▓▓▓▓▓▓ Emirates Airlines (EK) Employee ▓▓▓▓▓▓ was interviewed at John F. Kennedy International Airport (JFKIA), terminal 4. After being advised of the identity of the interviewing detective/special agent and the nature of the interview, ▓▓▓▓ provided the following information:

▓▓▓▓ advised that she was one of the flight attendants for EK #203 on October 26, 2015, which originated in Dubai, UAE. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ approached the passenger seated in 45E, identified as NADEEM MEHMOOD QURAISHI, DOB 12/21/1972, aka MUSHAHID CHAUDHRY, DOB 12/28/1975 Nadeem QURAISHI, the subject of the incident, and asked the following:

▓▓▓▓　　Did you use the lady's lotion?
QURAISHI: Yes, I used in my hands and body.

▓▓▓▓　　Did you use the lotion on the lady's body?
QURAISHI: Yes

▓▓▓▓　　Where did you use it?
QURAISHI: In her arms, shoulders and legs.

▓▓▓▓　　Did you touch her private parts?
QURAISHI: Yes

▓▓▓▓　　What made you do that, was she sleeping?
QURAISHI: Yes, she was sleeping. I thought she was enjoying it as she didn't offer any resistance.

▓▓▓▓　　Why did you do that?

Investigation on　10/26/2015　at　Jamaica, New York, United States (In Person)

File # ▓▓▓▓▓▓▓▓▓▓　　　　　　　　　　　　　　　　　　　Date drafted　10/28/2015

by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

QURAISHI000003

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of ▮▮▮▮▮▮▮▮▮▮ , On 10/26/2015 , Page 2 of 2

QURAISHI: I like, I like, it happened with me in my childhood.

QURAISHI000004

APPENDIX II

# THE PORT AUTHORITY POLICE OF NY & NJ
## STATEMENT

Page 1 of 2

Name: ███  DOB: ███  Age: 29

Home Address: _____

Social Security #: _____  Home Phone: (___) ███

Employed By: _____  Work Phone #: (___) ___

Employers Address: _____  Emp.ID#: ███

Work Days: _____  Work Hours: _____

Location Where Statement Is Taken: _____

Others Present During Statement: _____

Date Of Statement: 26/10/15   Day: MONDAY   Time Initiated: 0940

### DETAILED DESCRIPTION OF INCIDENT

I, ███, was a witness to, or involved in, an incident or crime that occurred on (Day) or ABOUT MONDAY (Date) 26/10/15 at (Time) 0845 (DUBAI TIME) at (Location) INFLIGHT ███ as follows:

CREW: DID YOU USE LADY'S LOTION
PAX: YES, I USED IN MY HAND'S & BODY
CREW: DID YOU USE THE LOTION ON LADY'S BODY
PAX: YES
CREW: WHERE ALL DID YOU USE IT.
PAX: IN HER ARMS, SHOULDERS & LEGS
CREW: DID YOU TOUCH HER PRIVATE PARTS
PAX: ~~NO~~ YES
CREW: WHAT MADE YOU DO THAT, WAS SHE SLEEPING
PAX: YES, SHE WAS SLEEPING. I THOUGHT SHE ENJOYING IT AS ~~SHE~~ SHE DIDN'T OFFER ANY RESISTANCE

Statement Continued:  [ ] NO   [✓] YES

**FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PERSUANT TO SECTION 210.45 OF THE NEW YORK STATE PENAL LAW.**

Signature of Person Taking Statement: _____   Signature of Person Making Statement: _____

Print Name: _____   Print Name: _____

Witness: _____   Time Statement Comp: **QURAISHI000005**

② 

# THE PORT AUTHORITY POLICE OF NY & NJ
## STATEMENT
Page 2 of 2

Name: ▮▮▮  DOB: ▮▮▮  Age: ▮▮
Home Address: 
Social Security #: _____  Home Phone: (___) ▮▮▮
Employed By: _____  Work Phone #: (___) _____
Employers Address: _____  Emp. ID#: ▮▮▮
Work Days: _____  Work Hours: _____
Location Where Statement Is Taken: _____
Others Present During Statement: _____

Date Of Statement: 26/10/15  Day: MONDAY  Time Initiated: 0940

### ED DESCRIPTION OF INCIDENT

I, ▮▮▮, was a witness to, or involved in, an incident or crime that occurred on /(Day) or about _____ (Date) 26/10/15 at (Time) 0845 (DXB TIME) at (Location) INFLIGHT as follows:

CONTINUED...
CREW: WHY DID YOU DO THAT
PAX: I LIKE, I LIKE, IT HAPPENED WITH ME IN MY CHILDHOOD
And after that we ISSUED him a FORMAL WARNING "On behalf of CAPT, your Behaviour is unacceptable, if it continues, we will be forced to take neccessary action against you"
And then he started crying & went back to his seat.

Statement Continued:  [ ] NO   [ ] YES

FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PERSIANT TO SECTION 210.45 OF THE NEW YORK STATE PENAL LAW.

Signature of Person Taking Statement: ▮▮▮
Print Name: 
Witness: 

Signature of Person Making Statement: ▮▮▮
Print Name: 
Time Statement Completed: 0959

QURAISHI000006

APPENDIX III

**Notes** | Subject

Did you use lotion
  yes

I used on my hand & face
  on [her] body
  applied on arms, shoulders
  legs

→ Did you use it on her private area he said yes.

→ Why

→ I thought she needed it
   I thought she was enjoying it
   she did not resist
        offer me any resistance

→ Was she awake
→ he said NO
→ what made you think
   she was enjoying it

Why did you do this
   I like it & it happened to
   me as a child
        crying
→ She [was] crying → [except] unacceptable

officer we are. why don't you tell us ...

QURAISHI000007